**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0001699
07-APR-2017
07:59 AM**

NOS. CAAP 13-0001699,
CAAP-15-0000516 AND CAAP-15-0000517

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-13-0001699**
LORNA SOUZA, TRUSTEE OF THE IRENE K. TAKAHAMA TRUST
DATED NOVEMBER 19, 1992, AS AMENDED, AND THE LAWRENCE I.
TAKAHAMA TRUST DATED NOVEMBER 19, 1992, Plaintiff-Appellee,
v.
ELIZABETH FISHER, Defendant-Appellant

**CAAP-15-0000516**
LORNA SOUZA, TRUSTEE OF THE IRENE K. TAKAHAMA TRUST
DATED NOVEMBER 19, 1992, AS AMENDED, AND THE LAWRENCE I.
TAKAHAMA TRUST DATED NOVEMBER 19, 1992, Plaintiff/Counterclaim
Defendant-Appellant,
v.
ELIZABETH FISHER, Defendant/Counterclaim
Plaintiff-Appellee

**CAAP-15-0000517**
LORNA SOUZA, TRUSTEE OF THE IRENE K. TAKAHAMA TRUST
DATED NOVEMBER 19, 1992, AS AMENDED, AND THE LAWRENCE I.
TAKAHAMA TRUST DATED NOVEMBER 19, 1992, Plaintiff/Counterclaim
Defendant-Appellee,
v.
ELIZABETH FISHER, Defendant/Counterclaim
Plaintiff-Appellant

APPEALS FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL CASE NO. 1RC12-1-000925)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

In this consolidated appeal, Plaintiff Lorna Souza,
Trustee of The Irene K. Takahama Trust Dated November 19, 1992,

as amended, and The Lawrence I. Takahama Trust Dated November 19, 1992, (**Souza**) and Defendant Elizabeth Fisher (**Fisher**) both appeal from various judgments and orders entered in the District Court of the First Circuit, Honolulu Division (**district court**).[1]  Their appeals stem from a landlord-tenant dispute litigated in the district court involving Souza's claims for summary possession and outstanding rent, and Fisher's counterclaims.

For the reasons discussed below, we resolve the appeals by Fisher and Souza by affirming in part, vacating in part, and remanding this case to the district court, as set forth below.

## Background

On February 15, 2012, Souza filed her Complaint in this case seeking summary possession and damages related to Fisher's tenancy in a residence located at 3038 Makini St., Honolulu, Hawaiʻi (**property**).  The Complaint alleges that Fisher rented the property pursuant to an oral agreement and owed unpaid rent totaling $51,920 ($1,180 per month).

This case arises from the following background.  In January 2006, Fisher entered an oral agreement with Irene K. Takahama (**Irene**) to rent the property for $1,180 per month.  The property is jointly owned by the Irene K. Takahama Trust, dated November 19, 1992, as amended (**Irene Trust**) and the Lawrence I. Takahama Trust dated November 19, 1992 (**Lawrence Trust**).  Irene was the trustee of both trusts at the time of the initial agreement.  Souza, who subsequently became trustee of the Irene Trust in 2010, testified that Irene was her "hanai aunty".

In 2008, Irene's neighbor, Harvey Ing (**Ing**) became involved in the landlord-tenant relationship.  Fisher asserts that in March 2008, Ing disconnected the hot water heater to the subject premises and that the property was without hot water for a number of years.

---

[1]  The Honorable Paul B.K. Wong presided, except as noted below.

On July 17, 2008, Ing, as agent for Irene, filed a Complaint for summary possession in Civ. No. 1RC08-1-5970. At a hearing on September 30, 2008, the district court orally ruled that Fisher needed to pay $5,700 into a rent trust fund for back rent.[2] The district court then issued a Writ of Possession (**10/9/08 Writ of Possession**) and Judgment for Possession (**10/9/08 Judgment for Possession**) in Ing's name as attorney-in-fact for Irene.[3] The writ was never enforced and Fisher remained on the property.

Moving forward, Fisher did not make any rent payments because she contends the parties agreed sometime in September 2008 that she would pay no rent until certain repairs were made on the subject premises, specifically, the hot water heater. Souza disputes such an agreement.

In 2010, Souza became trustee of the Irene Trust. On October 10, 2011, Souza was appointed trustee of the Lawrence Trust. On December 6, 2011, Souza initiated a summary possession proceeding in Civ. No. 1RC11-1-11198, which was subsequently dismissed without prejudice for failure to properly serve notice.

On January 23, 2012, Souza sent Fisher a demand letter for outstanding rent (**1/23/12 Notice**). Fisher did not pay any rent and complained to the City and County of Honolulu Department of Planning and Permitting (**DPP**) about the property's condition. On February 3, 2012, the DPP issued a Notice of Violation to Souza requiring, *inter alia*, repairs to the hot water system. In April 2012, repairs were completed to the hot water system by Stanley Souza. Even after the water heater was fixed, Fisher did not pay rent, claiming she had a "no rent" agreement and that there were other problems with the property.

---

[2] The Honorable Hilary B. Gangnes presided.

[3] The Honorable Gerald H. Kibe signed the 10/9/09 Writ of Possession and the 10/9/08 Judgment of Possession.

In the meantime, giving rise to the instant case, on February 15, 2012, Souza filed the complaint for possession and back rent. Fisher then filed a counterclaim.

In June 2012, Fisher filed a motion to dismiss, claiming Souza was not entitled to possession. The district court denied this motion.

The district court proceeded with a bifurcated trial on possession, awarding possession to Souza as set forth in its "Findings of Fact, Conclusions of Law, and Order re: Judgment" (**5/16/13 FOF/COL/Order**) filed on May 16, 2013.[4]

On July 8, 2013, Fisher filed a First Amended Counterclaim.[5] The district court thereafter proceeded with trial as to damages. On December 9, 2013, the district court entered its "Order Re: Judgment on Damages" (**12/9/13 Judgment on Damages**) in which it determined that Souza was owed $40,120 in unpaid rent, that Fisher was entitled to a total of $13,368.63 on her counterclaims, and that after offsetting these amounts Souza was entitled to $26,751.37.

Subsequently, on September 9, 2015, the district court entered three post-judgment orders relating to attorneys' fees and costs.

## Discussion
### A. Fisher's Appeals
### (CAAP 13-0001699 and CAAP-15-0000517)

In her appeals in CAAP-13-0001699 and CAAP-15-0000517, Fisher raises a total of what she identifies as thirty-two (32) points of error, with numerous sub-issues also asserted.

---

[4] The district court ruled that Fisher owed rent pursuant to HRS § 521-21 and that Souza was entitled to possession of the property. The district court also determined that Souza breached the warranty of habitability, but that the breach did not excuse Fisher's withholding of rent in its entirety.

[5] Fisher alleged (1) breach of implied warranty of habitability; (2) breach of contract; (3) negligence; (4) lack of hot water in violation of HRS § 521-74.5; (5) lack of hot water in violation of HRS § 480-2; (6) water shut off in violation of HRS § 521-74.5; (7) water shut off in violation of HRS § 480-2; and (8) quantum meruit for reimbursement of property taxes.

4

Fisher's points and arguments appear to be asserted and then reasserted in a variety of ways, and at times are difficult to discern. We address below Fisher's primary contentions to the extent they can be discerned, and have combined some of the issues for organization's sake.[6]

### (1) Standing and Jurisdiction

Fisher asserts that Souza lacks standing because she does not have title to the property, and that based on prior acts by Irene, title "remains in Ing and Irene as trustee of the Irene trust."[7] We disagree. As found by the district court, the Irene Trust and the Lawrence Trust are the owners of the subject property and prior to the filing of this action, Souza became the Trustee of both trusts. These findings are supported by the record, as well as documents filed in proceedings involving Irene of which the district court took judicial notice.[8]

Fisher's contention that Souza lacked standing and that the district court thus lacked jurisdiction is without merit.

### (2) Judicial Admission as to Rental Agreement

Fisher contends that in Souza's prior district court action, Souza made a judicial admission regarding the rental agreement. Fisher's contention apparently is that Souza claimed rent of $800 per month in the prior action, whereas Souza claims

---

[6] Fisher's points of error which are not argued, and arguments which are not discernable, are deemed waived. See Hawai'i Rules of Appellate Procedure (HRAP), Rule 28(b)(7); In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that an appellate court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks, brackets, and citation omitted). Further, Fisher filed a fifty-eight page opening brief in CAAP-13-0001699 in violation of a November 10, 2014 order, which allowed a forty-five page opening brief. Pursuant to a December 11, 2014 order by this court, the opening brief is disregarded after page forty-five.

[7] Fisher does not assert that she has a title interest in the property and does not assert a defense under Rule 12.1 of the District Court Rules of Civil Procedure.

[8] The district court took judicial notice of proceedings entitled In the Matter of the Protection of the Property of Irene K. Takahama, also known as Irene Kimiyo Takahama and Irene Kimiyo Shirikaku Takahama, C. No. 09-1-0023, Circuit Court of the First Circuit, State of Hawai'i.

$1,180 per month in the instant action.  The prior action was dismissed without prejudice and this action then followed.

Fisher's "judicial admission" argument is inconsistent with her position throughout this case (and in this appeal) that after September 2008, she lived on the property pursuant to a "no rent" agreement.  In other words, it was not (and is not) Fisher's position that she should only pay $800 per month.  Thus, it appears that her "judicial admission" argument is waived.  See Furuya v. Ass'n. of Apartment Owners of Pac. Monarch, Inc., No. 30485, 2014 WL 1658331, at *12  (Haw. App. Apr. 25, 2014).

Further, even if the issue is not waived, Souza's claim for rent of $800 per month in the earlier action did not constitute a judicial admission because it was a legal position based on information available to Souza at the time.  See Lee v. Puamana Cmty. Ass'n, 109 Hawaiʻi 561, 574, 128 P.3d 874, 887 (2006)(noting that statements in another action were not binding judicial admissions but rather legal positions).  Such a claim would have been subject to amendment if the earlier action had not been dismissed.  See District Court Rules of Civil Procedure (**DCRCP**) Rule 15; see also Adams v. Dole Food Co. Inc., 132 Hawaiʻi 478, 484-87, 323 P.3d 122, 128-31 (App. 2014).

### (3) Alleged Revised Rental Agreement and Hawaii Revised Statutes (HRS) § 521-21

Fisher argues that she "agreed that a superseding [rental agreement] governed her tenancy, but because it did not require her to pay $800/month – or any – rent, non-payment was not wrongful."  It appears Fisher thus contends the district court improperly determined she owed rent under HRS § 521-21 (2006) and, in turn, improperly awarded possession to Souza.

It is well settled that "[t]he appellate courts will give due deference to the right of the trier of fact 'to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced.'"  In re Doe, 107 Hawaiʻi 12, 19, 108 P.3d 966, 973 (2005) (citation omitted)).

6

In the trial regarding possession, the district court weighed the evidence and found that Fisher owed rent under HRS § 521-21.[9] The district court expressly found that, "based on the credible testimony, an agreement for 'no rent' did not exist." There is evidence to support this finding and the district court did not clearly err in this finding. Moreover, given this finding, the district court did not err in thereafter determining that Fisher owed rent under HRS § 521-21 and in awarding possession to Souza.

### (4) HRS § 666-13

Fisher contends that, upon the issuance of the 10/9/08 Writ of Possession in the action filed by Ing, the rental agreement was cancelled based on HRS § 666-13 (2016).[10] We agree with the district court that this argument does not assist Fisher. Even assuming the earlier 10/9/08 Writ of Possession canceled the then-existing rental agreement, the record is clear that Fisher continued to reside at the subject property, effectively becoming a holdover tenant, and did not pay any rent. Even in this scenario, Souza would be entitled to possession.

### (5) Souza's Notice Under HRS § 521-68

Fisher contends that the district court erred when it concluded that Souza's notice to pay outstanding rent was proper. Fisher specifically contests FOF 15 and COL 4 in the 5/16/13 FOF/COL/Order. FOF 15 states:

---

[9] HRS § 521-21 provides in relevant part:

> **§521-21 Rent.** (a) The landlord and tenant may agree to any consideration, not otherwise prohibited by law, as rent. In the absence of such agreement, and subject to section 521-71(e) in the case of holdover tenants, the tenant shall pay to the landlord the fair rental value for the dwelling unit.

[10] HRS § 666-13 provides:

> **§666-13 Effect of writ.** Whenever a writ is issued for the removal of any tenant, the contract for the use of the premises, if any exists, and the relation of landlord and tenant between the parties, shall be deemed to be canceled and annulled.

> On January 23, 2012, Plaintiff sent Defendant a letter
> demanding the payment of back rent (the "Demand
> Letter"). The Demand Letter also provided notice that
> if rent was not paid within 5 days, Plaintiff would
> seek possession of the Property. The rent due was
> calculated using the original rate of $1180 per month
> established by Irene Takahama.

Fisher contends that the 1/23/12 Notice, which asserted outstanding rent of $33,600 *at a minimum*, based on $800 per month, did not satisfy the statutory requirements under HRS § 521-68 (2006). The 1/23/12 Notice, in pertinent part, states:

> You have failed or refused to pay rent since
> July 2008 and are in breach of any rental agreement
> you may have had with Ms. Irene Takahama. You now owe
> the minimum amount of $33,600, which reflects rent in
> the amount of $800 from July 2008 to December 1, 2011.
> Please note we reserve the right to seek rent in the
> amount of $1,180 per month as this appears to have
> been the amount you were paying to Ms. Takahama.
>
> . . .
>
> [W]e are providing you with this notice under Hawaii
> Revised Statutes Section 521-68, that you have five (5)
> business days from receipt of this notice to pay the amount
> demanded of $33,600. If you do not pay the $33,600 as
> required, any rental agreement you may still have will be
> terminated and we will obtain a judgment for possession and
> writ of possession for your immediate eviction.

In the 1/23/12 Notice, the $33,600 of minimum unpaid rent was not calculated based on $1,180 per month, and thus the district court's FOF 15 was incorrect in this regard. However, the error was harmless. The 1/23/12 Notice specified that Souza was reserving the right to seek rent based on $1,180 per month. Wright v. Wright, 1 Haw. App. 581, 584, 623 P.2d 97, 100 (1981) ("Erroneous findings of fact that are unnecessary to support the decision and judgment of the trial court are not grounds for reversal.").

Fisher also contests COL 4, which follows from FOF 15. COL 4 states that "Defendant failed to pay rent for her possession of the Property since 2008 and the Demand Letter sent by Plaintiff to Defendant is consistent with the requirements of HRS § 521-68." HRS § 521-68(a) provides:

> §521-68 Landlord's remedies for failure by tenant to pay rent. (a) A landlord or the landlord's agent may, any time after rent is due, demand payment thereof and notify the tenant in writing that unless payment is made within a time mentioned in the notice, not less than five business days after receipt thereof, the rental agreement will be terminated. . . . If the tenant remains in default, the landlord may thereafter bring a summary proceeding for possession of the dwelling unit or any other proper proceeding, action, or suit for possession.

Although Souza demanded a minimum amount owing, she put Fisher on notice that she may claim rent at $1,180 per month. This notice is not inconsistent with HRS § 521-68. Therefore, COL 4 is not wrong.

### (6) Fisher's Motion to Dismiss

Fisher asserts that the district court erred in its denial of the 6/12/12 Motion to Dismiss, which was actually a motion for summary judgment given that a declaration and exhibits were attached thereto for consideration. Based on our de novo review of this motion, summary judgment was not appropriate. See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 295-96, 142 P.3d 459, 468-69 (2006). Fisher and Souza presented conflicting evidence regarding material issues of fact such as the existence of a rental agreement, whether Souza was entitled to bring the summary possession action, and whether and to what extent rent payments were owed. The district court thus properly denied Fisher's motion and proceeded to trial.

### (7) Fair Rental Value

Fisher asserts that the district court erred in finding that the value of the property was greater than zero and that expert evidence should have been the only evidence considered by the district court. Fisher fails to show that the district court abused its discretion in admitting Souza's testimony in determining the fair rental value of the property, which was based on the amount Fisher originally agreed to with Irene Takahama, with an offset for a period of time due to the lack of hot water. See Hawaii Rules of Evidence (**HRE**) Rule 701; State v. Bermisa, 104 Hawai'i 387, 392, 90 P.3d 1256, 1261 (App. 2004);

9

see also Krog v. Koahou, No. SCWC-12-0000315, 2014 WL 813038, at
*4 (Haw. Feb. 28, 2014).

### (8) Implied Warranty of Habitability

Fisher contends that given that the district court
found that Souza breached the implied warranty of habitability,
an award of possession to Souza is precluded.  A lease of a
dwelling has an implied warranty of habitability and fitness for
the use intended.  Lemle v. Breeden, 51 Haw. 426, 433, 462 P.2d
470, 474 (1969).  The premises must be "suitable for the leased
purposes and conform to local codes and zoning laws." Id.
(citation omitted).

> By adopting the view that a lease is essentially a
> contractual relationship with an implied warranty of
> habitability and fitness, a more consistent and responsive
> set of remedies are available for a tenant. They are the
> basic contract remedies of damages, reformation, and
> rescission. These remedies would give the tenant a wide
> range of alternatives in seeking to resolve his alleged
> grievance.
>
> In considering the materiality of an alleged breach, both
> the seriousness of the claimed defect and the length of time
> for which it persists are relevant factors. Each case must
> turn on its own facts.

Id. at 436, 462 P.2d at 475-76.

Here, where Fisher remained on the property despite the
lack of hot water, the hot water was eventually restored, and
Fisher continued to occupy the property without paying any rent,
the district court properly determined that she should not be
relieved of her obligation to pay rent in its entirety.  We agree
with the district court that under the circumstances of this
case, an offset or rent reduction was the proper way to remedy
the breach of the warranty of habitability.  Thus, the district
court did not err in ruling that, although there were breaches of
the implied warranty of habitability, Fisher still owed a reduced
rent for remaining on the property and her failure to pay any
rent warranted awarding Souza with possession.

### (9) HRS §§ 521-74 and 521-74.5

Fisher contends that Souza should not prevail on
possession because violations under HRS §§ 521-74 (2006) and 521-

10

74.5 (2006) precluded the court from awarding possession. Fisher offers no relevant authority for her argument that a landlord cannot regain possession of their property despite a violation of HRS § 521-74.5,[11] especially where as in this case a tenant remains in possession of the property throughout, does not pay any rent, and any violation of HRS § 521-74.5 was remedied by the landlord. Similarly, Fisher's failure to pay any rent for an extensive period in this case precludes any argument she might have under HRS § 521-74. Fisher's arguments here are without merit.

**(10) Fisher's Claims Under HRS §§ 480-2 and 480-13(b)(1)**

Fisher contends that, given the district court's determination that the lack of hot water violated HRS § 521-74.5, the court erred in not awarding her mandatory statutory penalties under HRS § 521-74.5 and damages based on HRS §§ 480-2 and 480-13(b)(1) (2008). We do not agree.

A landlord who engages in an act prohibited by HRS § 521-74.5 is "deemed to have engaged in an unfair method of competition or unfair and deceptive acts or practices in the conduct of any trade or commerce within the meaning of section 480-2." However, the specified remedies for such conduct, as expressly set forth in HRS § 521-74.5, are the penalties

---

[11] HRS § 521-74.5 provides:

§521-74.5 Recovery of possession limited. The landlord shall not recover or take possession of a dwelling unit by the wilful interruption or diminution of running water, hot water, or electric, gas, or other essential service to the tenant contrary to the rental agreement or section 521-42, except in case of abandonment or surrender. A landlord who engages in this act shall be deemed to have engaged in an unfair method of competition or unfair and deceptive acts or practices in the conduct of any trade or commerce within the meaning of section 480-2; provided that in addition to the penalties available under section 480-3.1, there shall also be minimum damages of three times the monthly rent or $1,000, whichever is greater.

11

available under HRS § 480-3.1[12] and the "minimum damages of three times the monthly rent or $1,000, whichever is greater."  It does not appear that the legislature intended HRS § 521-74.5 to allow for the recovery of damages under HRS § 480-13(b)(1).[13]

Moreover, Fisher's claims for damages under HRS § 480-13(b)(1) are misplaced because a person must be a "consumer" to recover damages under this provision.[14]  A

---

[12]  HRS § 480-3.1 provides, *inter alia*, that any person violating HRS § 480-2 shall be fined a sum between $500 and $10,000 for each violation, with such sum collected in a civil action brought by the attorney general or the Director of the Office of Consumer Protection on behalf of the State.  HRS § 480-3.1 does not provide for a private right of action by an individual.

[13] This reading is consistent with the legislative history for HRS § 521-74.5.  See H. Stand. Comm. Rep. No. 538, in 1987 House Journal, at 1353-1354 in ("Your Committee has amended the bill pursuant to the recommendation of the Office of Consumer Protection to include a provision that will make a violation of the section a per se violation of Section 480-2, Hawaii Revised Statutes, and to provide an additional remedy of minimum damages of three times the monthly rent or $1,000, whichever is greater.").

When originally adopted in 1987, HRS § 521-74.5 stated in relevant part: "provided that in addition to the penalties available under section 480-2, there shall also be minimum damages of three times the monthly rent or $1,000, whichever is greater." H.B. 477, H.D.I., 14th Leg. Reg. Sess. (1987). (emphasis added).  However, in 1990, HRS § 521-74.5 was amended to its current version to state in relevant part: "provided that in addition to the penalties available under section [480-2] 480-3.1, there shall also be minimum damages of three times the monthly rent or $1,000, whichever is greater."  1990 Haw. Sess. Laws Act 34, §33 at 63.  The committee reports in 1990 state that the original reference to penalties under HRS § 480-2 appears to have been a typographical error because that section "refers to unfair competition practices that are declared unlawful[,]" whereas HRS § 480-3.1 "refers to the civil penalty for violations of section 480-2[,]" and thus HRS § 521-74.5 "should be amended to change the second reference to section 480-2 to 480-3.1."  See H. Stand. Comm. Rep. No. 545-90, in 1990 House Journal, at 1047; S. Stand. Comm. Rep. No. 2928, in 1990 Senate Journal, at 1201.  If, as Fisher contends, the legislature intended to provide for damages under HRS § 480-13(b)(1) when HRS § 521-74.5 is violated, it apparently would have specified that section, but instead it only specified the civil penalties under HRS § 480-3.1.

[14] HRS § 480-13(b)(1) provides:

> § 480-13.  **Suits by persons injured; amount of recovery, injunctions**
>
> . . . .
>
> (b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
>      (1) May sue for damages sustained by the consumer,
>                                        (continued...)

"consumer" is defined as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1 (2008). In the context of this case, Fisher does not qualify as a "consumer." See Cieri v. Leticia Query Realty, Inc., 80 Hawaiʻi 54, 66, 905 P.2d 29, 41 (1995)(holding that "for purposes of determining whether a plaintiff has standing to sue for unfair and deceptive trade acts or practices as a 'consumer' pursuant to HRS § 480-13, real estate and residences are not 'goods' as that term is utilized in HRS § 480-1"); Fernandez v. Mark Development, Inc., No. 29331, 2011 WL 5089808, at *2 (Haw. App. Oct, 25, 2011) (holding that tenant was not a "consumer" under HRS § 480-1 for purposes of making claims against landlord), cert. denied, No. SCWC-29331, 2012 WL 313579 (Haw. Feb. 2, 2012).

We therefore reject Fisher's arguments that the district court should have awarded her further damages under HRS § 480-13(b)(1) due to the district court's determination that there were violations of HRS § 521-74.5.

**(11) September 9, 2015 Orders**

Fisher argues that we should vacate three orders issued by the district court on September 9, 2015, which granted various awards of attorney's fees and costs,[15] because the district court

---

[14](...continued)
and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5;

[15] The relevant orders on September 9, 2015 awarded: attorney's fees of $49,095.50 and costs of $3,165.86 to Souza under HRS §§ 666-14 and 607-9;

(continued...)

was without jurisdiction to issue the orders after the parties had previously filed notices of appeal.

We lack appellate jurisdiction to review the September 9, 2015 orders.  Prior to these September 2015 orders, Fisher had timely appealed from the Judgment for Possession and Writ of Possession issued on May 30, 2013, by filing a notice of appeal on July 1, 2013, which resulted in CAAP-13-0001699.  Fisher had also timely appealed from the district court's various rulings as to damages and Fisher's counterclaims by filing a notice of appeal on July 10, 2015, which resulted in CAAP-15-0000517.  However, after the September 9, 2015 orders were issued, Fisher filed an "Amended Notice of Appeal" on October 9, 2015, in CAAP-15-0000517.

In Enos v. Pacific Transfer & Warehouse, Inc., 80 Hawai'i 345, 910 P.2d 116 (1996), the Hawai'i Supreme Court held that it did not have appellate jurisdiction where a party had filed an "amended" notice of appeal, noting that "[s]ince an amended notice of appeal relates back to the notice of appeal it purports to amend, it does not appeal an order, judgment, or decree entered subsequent to the notice of appeal it purports to amend."  Id. at 355-56, 910 P.2d at 126-27 (quoting Chan v. Chan, 7 Haw. App. 122, 129, 748 P.2d 807, 811 (1987)).  See also In re Robinson Trust, 110 Hawai'i 181, 184 n.5, 130 P.3d 1046, 1049 n.5 (2006); State v. Ontiveros, 82 Hawai'i 446, 448 n.5, 923 P.2d 388, 390 n.5 (1996).

### (12) Fisher's Remaining Issues

With regard to Fisher's other points of error, we conclude that they either lack merit, are not discernable, or have not been argued and are thus waived.

---

[15](...continued)
attorney's fees of $3,342.16 and costs of $3,071.73 to Fisher under HRS §§ 607-14 and 607-9; and attorney's fees of $892.50 to Souza based on the district court's prior ruling awarding Souza fees in opposing a Rule 11 motion filed by Fisher.

## B. Souza's Appeal (CAAP-15-0000516)

In Souza's appeal in CAAP-15-0000516, she asserts the district court erred by:

(1) concluding that Fisher was the prevailing party in the damages trial;

(2) determining that Ing, acting as agent of both trusts, violated HRS § 521-74.5 by targeting Fisher and interrupting the hot water supply to the property;

(3) awarding elevated damages of $5,000 pursuant to HRS § 480-13(b)(1) because Fisher is an "elder," based on Ing's violation of HRS § 521-74.5;

(4) determining there was a violation of HRS § 521-74.5 due to Stan Souza's request to the Board of Water Supply to shut off water to the property in November 2012; and

(5) failing to reconsider its rulings (a) that Fisher was the prevailing party in the damages trial and (b) awarding Fisher damages under HRS § 521-74.5.

### (1) Prevailing Party

Souza contends the district court erred in concluding that Fisher was the prevailing party in the damages trial. This is apparently relevant to the question of awarding attorney's fees under HRS § 607-14 (2014) for actions in the nature of assumpsit. See Forbes v. Hawaii Culinary Corp., 85 Hawaiʻi 501, 511, 946 P.2d 609, 619 (App. 1997)(holding that in a summary possession action where damages are also sought, an award for attorney's fees under HRS §§ 607-14 and 666-14 should not result in double recovery and the trial court must "designate the specific amount awarded pursuant to the statute involved").

We agree with Souza that in the 12/9/13 Judgment on Damages the district court erred in relying on Concord Village Management Co. v. Rubin, 421 N.Y.S.2d 811 (1979), in holding that Fisher was the prevailing party as to the damages claims. Rather, under Hawaiʻi case law, "[a] party need not sustain his entire claim in order to be a prevailing party for purposes of entitlement to costs and attorneys' fees." Fought & Co. v. Steel

15

Eng'g. and Erection, Inc., 87 Hawaiʻi 37, 52, 951 P.2d 487, 502 (1998)(internal quotation marks and citation omitted). Generally, "where a party prevails on the disputed main issue [in a case], even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1991)(quoting Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)).

At the damages trial, Souza claimed she was entitled at that point to outstanding rent of $61,184, but with an offset for Fisher for a year due to the lack of hot water. Fisher, on the other hand, claimed that she owed no rent based on an agreement made in September 2008 and sought damages for her counterclaims. The district court ultimately rejected Fisher's contention that there was a "no rent" agreement. The court also determined that: the original rent of $1,180 per month was reasonable; that Souza was owed $24,780 in reduced unpaid rent from November 2008 to April 2012;[16] and Souza was owed $15,340 in unpaid rent from May 2012 to June 2013.[17] Given these circumstances, Souza was the prevailing party for purposes of HRS § 607-14.

### (2) Ing's Violation of HRS § 521-74.5

Souza contends the district court erred in determining that Ing, acting as agent of both trusts, violated HRS § 521-74.5. In particular, Souza contends that the district court improperly relied on Fisher's testimony that she had heard in March 2008 that Ing had done something to the water heater and had told Fisher's friends they were unwelcome in the property and

---

[16] The district court reduced the rent by 50% during this period for the lack of hot water.

[17] Even after reducing the amount owed to Souza for unpaid rent by the amounts awarded to Fisher for violations of HRS § 521-74.5 and for quantum meruit damages, there was a net award of $26,751.37 to Souza. The district court awarded $5,000 to Fisher for Ing's violation of HRS § 521-74.5 (which we vacate in part below); awarded $3,540 to Fisher for Stan Souza's violation of HRS § 521-74.5 (which we vacate below); and awarded Fisher $4,828.63 in quantum meruit damages.

he planned to move in. Souza does not assert or point to anything in the record indicating that she objected to Fisher's testimony in this regard. Given the totality of the evidence in this case, we conclude there was sufficient evidence to support the district court's determination that Ing violated HRS § 521-74.5.[18]

### (3) Award of $5,000 under HRS § 480-13(b)(1)

Souza argues that the award of $5,000 to Fisher under HRS § 480-13(b)(1), due to Ing's violation of HRS § 521-74.5, was improper. We agree. As discussed above, a violation of HRS § 521-74.5 warrants civil penalties under HRS § 480-3.1 and the "minimum damages of three times the monthly rent or $1,000, whichever is greater," but does not authorize the award of damages under HRS § 480-13(b)(1).

The district court's award of $5,000 for Ing's violation of HRS § 521-74.5 was based on specific provisions in HRS § 480-13(b)(1). Therefore, the award of $5,000 is vacated. On remand, the district court may award Fisher "minimum damages of three times the monthly rent or $1,000, whichever is greater," pursuant to HRS § 521-74.5.

### (4) Stan Souza's Violation of HRS § 521-74.5

Souza argues that the district court's findings are inconsistent with its determination that Stan Souza violated HRS § 521-74.5. We agree.

In this regard, the district court found that when Stan Souza called the Board of Water Supply to shut off water to the property, he was under the belief the premises might be abandoned. The district court also noted that Stan Souza's actions were not specifically targeting Fisher. Indeed, there is evidence that neighbors were complaining that homeless individuals were coming onto the property. The district court's findings do not support its ruling that Stan Souza engaged in a

---

[18] Souza does not raise a point of error that there was no violation of HRS § 521-74.5 given that Fisher remained in possession of the property. We thus do not reach this issue.

"wilful interruption" of hot water to gain possession of the property from Fisher.  Therefore, we vacate the district court's ruling that Stan Souza's conduct was a violation of HRS § 521-74.5 and the award of $3,540 to Fisher based on that ruling.

### (5) Souza's Remaining Issues

Our rulings above resolve Souza's remaining points of error regarding her motion for reconsideration in the district court.

### Conclusion

Based on the foregoing:

(1) We affirm the district court's Judgment for Possession entered on May 30, 2013, in favor of Souza.

(2) We vacate in part the district court's "Order Re: Judgment on Damages," filed December 9, 2013, to the extent that it: (a) determined that Fisher is "the prevailing party for the determination of attorneys' fees for the damages portion of the [bifurcated] trial;" (b) awarded Fisher $5,000 under HRS § 480-13(b)(1) because of Ing's violation of HRS § 521-74.5; (c) held that Stan Souza's conduct violated HRS § 521-74.5 and thus awarded Fisher $3,540 based on that ruling.  This order is otherwise affirmed.

(3) We vacate in part the "Order Granting in Part and Denying in Part [Souza's] Motion for Reconsideration of Its Order Re: Judgment on Damages," filed on June 10, 2015, to the extent that the district court: (a) denied Souza's request to reconsider its ruling that Fisher is the prevailing party as to the damages trial; and (b) denied Souza's request to reconsider the awards under HRS § 521-74.5 of $5,000 for Ing's violation of the statute, and $3,540 based on Stan Souza's alleged violation of the statute.  This order is otherwise affirmed.

(4) We lack appellate jurisdiction to review the following orders by the district court filed on September 9, 2015: (a) the Order granting Souza attorney's fees of $49,095.50 and costs of $3,165.86; (b) the Order granting Fisher attorney's fees of $3,342.16 and costs of $3,071.73; and (c) the Order

18

granting Souza attorney's fees of $892.50.[19]

The case is remanded to the district court for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, April 7, 2017.

On the briefs:

Peter C. Labrador,
(in CAAP-13-0001699),
for Elizabeth Fisher.

Elizabeth Fisher,
(in CAAP-15-0000516 and
CAAP-15-0000517),
pro se.

Michael J. Nakano,
Cynthia A. Farias,
for Lorna Souza, Trustee of the
Irene K. Takahama Trust Dated
November 19, 1992, as Amended,
and The Lawrence I. Takahama Trust
Dated November 19, 1992.

Presiding Judge

Associate Judge

Associate Judge

---

[19] On remand, however, the district court should re-visit these orders to be consistent with this decision. Further, the district court may also address on remand other issues raised by the parties related to these orders, including whether it had jurisdiction to enter the orders in September 2015.